UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNE E. TANN,

                Plaintiff,                          Case Number 10-14696
                                                          Honorable David M. Lawson

v.

CHASE HOME FINANCE, L.L.C. and
IBM LENDER BUSINESS PROCESS
SERVICES, INC.,

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANT CHASE HOME FINANCE, L.L.C.

Before the Court is a motion by defendant Chase Home Finance, L.L.C. for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The plaintiff brought this action originally in the Oakland County, Michigan circuit alleging that the defendants, an assignee of the plaintiff's residential mortgage and the loan servicer, violated federal and state law when they sought a foreclosure by advertisement when the loan was not actually in default. Chase Home Finance, with the consent of IBM Lender Business Process Services, Inc., removed the case to this Court based on federal question and diversity jurisdiction. The plaintiff filed an amended complaint. Chase Home Finance then answered the complaint and its amendment and filed the present motion on March 24, 2011. The plaintiff has not responded to the motion and the time for doing so has long passed. *See* E.D. Mich. LR 7.1(e)(1). The Court has reviewed the pleadings and motion papers and finds, despite the plaintiff's failure to respond, that the papers adequately set forth the relevant facts and law and oral argument will not aid in the disposition of the motion. Therefore, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2).

The plaintiff sets forth counts under the Fair Debt Collection Practices Act (FDCPA) and Real Estate Settlement and Procedures Act (RESPA), and also alleges fraud, seeks an accounting, and, in separate counts, claims entitlement to temporary and permanent injunctions and exemplary damages. The Court concludes that the complaint does not set forth properly claims against defendant Chase Home Finance for fraud, violation of the FDCPA, or RESPA, and it is inadequate to invoke the Court's equitable powers to order an accounting. In addition, the counts seeking an injunction and exemplary damages pray for remedies without an underlying cause of action. However, viewing the complaint's allegations in the light most favorable to the plaintiff, the Court finds that it sets forth a claim for intentional infliction of emotional distress. Therefore, the Court will grant the motion for judgment on the pleadings in part and dismiss the complaint as to all claims except the one for intentional infliction of emotional distress.

I.

The facts of the case are taken from the complaint and answer, the attachments to the complaint, papers necessarily incorporated by reference therein, and documents on file in the public record. The underlying debt originated in 2001, when plaintiff Anne Tann and her husband Jack financed the purchase of their home in West Bloomfield Township, Michigan through Charter One Bank. They signed a promissory note in the amount of $194,000, which was secured by a first mortgage. The note called for monthly payments of $1,274.45. The mortgage "grant[ed] and convey[ed] to Lender and Lender's successors and assigns, with power of sale" rights to the Property. Def.'s Mot. for J. on the Pleadings, Ex. A, Mortgage at 3. Charter One Bank reserved the right to sell the "Note or a partial interest in the Note (together with [the Mortgage]) . . . one or more times without prior notice to the Borrower." *Id.* at 12. The Mortgage also included an acceleration

-2-

provision with a thirty day allowance to cure any default once notice is given. *Id.* at 13. Charter One Bank recorded the Mortgage with the Oakland County Register of Deeds on November 28, 2001. According to defendant Chase Home Finance, as of August 2009, the plaintiff owed $181,607.28 on the note.

Charter One assigned the Mortgage to JPMorgan Chase Bank on September 1, 2006. JPMorgan recorded the assignment with the Oakland County Register of Deeds on September 13, 2006. On September 7, 2006, defendant Chase Home Finance L.L.C. alleges in its answer to the complaint that it obtained a servicing interest in the plaintiff's loan when JPMorgan Chase Bank assigned the mortgage to defendant Chase on April 8, 2010, with the transfer becoming effective on April 19, 2010. Defendant Chase Home Financing recorded the assignment with the Oakland County Register of Deeds on April 14, 2010. Defendant Chase assigned the mortgage to Fannie Mae on July 20, 2010, with the transfer becoming effective on August 1, 2010, and Fannie Mae recorded its interest in the mortgage with the Oakland County Register of Deeds on September 9, 2010. On August 1, 2010, defendant IBM Lender Business Process Services, Inc. (LPBS) obtained a servicing interest in the plaintiff's loan.

Under the terms of the Mortgage, the plaintiff should have received notice each time the identity of the loan servicer changed as a result of these transfers. Neither party states whether the plaintiff received notice, but the plaintiff alleges that the series of assignments has created "a huge ambiguity as to the owner of Plaintiff's Mortgage and Promissory Note," which can only be remedied through an accounting. Compl. ¶¶ 45, 49.

According to defendant Chase, the plaintiff first fell into default when she failed to make payments in February, March, and April 2009. Defendant Chase sent the plaintiff a letter on June

-3-

27, 2009 informing her that she and her husband had fallen behind on their mortgage payments and owed $6,062.22. The letter acknowledged that the plaintiff's husband, Jack Tann, had received a Chapter 7 bankruptcy discharge that relieved him of all personal liability on the Loan. Chase disclaimed in its letter it was attempting to collect the debt, but rather the letter was a notice that defendant Chase could enforce its security interest against the property if the plaintiff and her husband did not resolve their default. Chase informed the plaintiff that she must cure the default within 37 days to avoid having defendant Chase "take steps to terminate [her] ownership interest in the Property by commencing foreclosure proceedings or taking other action to seize the Property." Compl., Ex. A, June 27, 2009 letter, at 2. The letter also informed the plaintiff that there were some loss mitigation programs available that might help her resolve the default. Finally, defendant Chase warned the plaintiff it was under no obligation to accept less than the full amount owed and if the default was not cured quickly the total amount due could increase. This letter allegedly caused the plaintiff to "suffer a panic attack, hospitalization, blood pressure of 246/144 and a heart rate of 170." Compl. ¶ 21.

Pursuant to the plaintiff's request, defendant Chase sent the plaintiff another letter on July 14, 2009 providing her with information about her recent mortgage payments. The letter explained that the payments the plaintiff made in May, June, and July 2009 were applied to the previous three months when payments were not made, and therefore the plaintiff remained three months behind on her payments. The plaintiff contests the accuracy of defendant Chase's debt calculations both here and throughout the collection process and alleges the defendants acted fraudulently because they intentionally and knowingly or recklessly made false representations regarding the amount of debt. However, the pleadings do not indicate the particulars of how the representations were false, except

-4-

to say that the plaintiff believed she was current on her loan. *See* Compl. ¶¶ 15, 57. Defendant Chase, on the other hand, alleges that the amount of debt due was not misrepresented and that the plaintiff did not cure the default but continued to make late monthly payments that were applied to payments due three months prior.

The plaintiff's husband, Jack Tann, passed away on February 13, 2010. Two months later, on April 16, 2010, the plaintiff sent a qualified written request (QWR) pursuant to the Real Estate Settlement and Procedures Act (RESPA) asking defendant Chase for information about the fees, costs, and escrow accounting of her Mortgage. The plaintiff's letter requested specific information about and detailed breakdowns of payment history, payment deficiencies, and all charges accrued on the account since the date of closing. In that letter the plaintiff issued a blanket statement disputing "all late fees, charges, inspection fees, property appraisal fees, forced placed insurance charges, legal fees and corporate advances charged to [her] account." Def.'s Mot. for J. on the Pleadings, Ex. M, April 16, 2010 letter.

Defendant Chase replied via letter on April 20, 2010, acknowledging receipt of the plaintiff's QWR. *Id.*, Ex. N, April 20, 2010 letter. Defendant Chase followed this correspondence with another letter on June 16, 2010 that included several documents that included at least some of the information the plaintiff requested. The documents the plaintiff requested but were not provided were characterized by defendant Chase as "proprietary or . . . not available," and defendant Chase indicated they would not be provided. Def.'s Mot. for J. on the Pleadings, Ex. H, June 16, 2010 letter. Defendant Chase says it furnished the Note, mortgage, a HUD-1 settlement statement, a Truth in Lending disclosure statement, a good faith estimate, certain disclosures, the appraisal report, the loan application, payment history, annual escrow disclosure statement, and payoff quote. *Ibid.* Of

-5-

those documents, only the Note, the Mortgage, and some payment history were filed as part of the record in this case.

The plaintiff alleges that as a result of defendant Chase's initial June 27, 2009 letter and alleged subsequent conduct, the plaintiff suffered significant emotional and physical distress. The plaintiff contends that both defendants intentionally continued to send letters in her deceased husband's name and call her home asking for her deceased husband even after she provided a copy of the death certificate. In addition, the defendants allegedly used obscene, profane, or abusive language, attempted to coerce payment of the debt, repeatedly called the plaintiff's home with the intent to abuse and harass her, and made false representations about the amount of debt and legal actions that could possibly result from the plaintiff's non-payment. The plaintiff contends that the defendants' conduct resulted in severe physical effects as well as continuing emotional distress. According to the plaintiff, as a result of the defendants' actions:

> She was hospitalized for a panic attack and has been treated for extreme anxiety since that hospitalization with Topol XL qd (one per day) 25 mg Xanax .50 mg. tid 3 times, Zoloft 50 mg. qd (one per day) and was placed by her physician on an eight (8) week leave from work for medical reasons.

Compl. ¶ 20.

In addition, the plaintiff alleges that she entered into a mortgage modification agreement with the defendants at some time in 2010, but the defendants then allegedly refused to apply the plaintiff's payments during her mortgage modification trial period in September and October 2010. The plaintiff contradicts those allegations with her assertion that the defendants are liable for "ultimately denying Plaintiff's request for a mortgage modification." Pl.'s Mot. for a TRO, Prelim. Inj., Show Cause Order ¶ 6. The plaintiff contends that Tashia Winstanley, a mortgage modification expert, frequently communicated with the defendants regarding a modification plan. Although

defendant Chase acknowledges that it spoke with Ms. Winstanley, both defendants deny the plaintiff's allegations that a mortgage modification was put in place.

On October 25, 2010, the plaintiff filed her complaint in the Oakland County, Michigan circuit court alleging (1) violations of the FDCPA, (2) fraud in debt calculation, (3) violation of RESPA, (4) entitlement to an accounting to determine who owns the mortgage and note, the identity of the mortgage servicer, and who has legal authority to foreclose the mortgage, (5) entitlement to exemplary damages for her humiliation, outrage, indignation, and negative health impacts, and (6) entitlement to a temporary restraining order, show cause order, preliminary injunction, and permanent injunction enjoining foreclosure by advertisement. As mentioned above, the defendants removed the case to this Court, and defendant Chase's motion for judgment on the pleadings followed.

## II.

Federal Rule of Civil Procedure 12(c) states that, "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) generally is determined by the standards that govern motions to dismiss brought under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(c); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).

-7-

Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions."  *Ibid.*; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009).

> To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief.  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009).

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts.  "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded.  *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555).  However, as long as a court can "'draw the reasonable inference that the defendant

is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 129 S. Ct. at 1949).

Consideration of a motion to dismiss under Rule 12(b)(6), and therefore Rule 12(c), is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 336. Further, where the plaintiff does not refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents). In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335-336).

Defendant Chase attached several documents to its motion for judgment on the pleadings, including the Mortgage and the Note, both of which the plaintiff refers to in the complaint as central to her claim. In addition, defendant Chase attached documents detailing the series of Mortgage and Note assignments, letters written on April 16, 2010, April 20, 2010, June 16, 2010, and July 14, 2009, and a payment history. The plaintiff referred to the April 16, 2010 letter in her complaint, Am. Compl. ¶ 77, and defendant Chase referred to the April 20 and June 16, 2010 letters in its answer to the plaintiff's amended complaint, Def. Chase's Am. Answer ¶ 79. The remainder of the documents are matters of public record and are pertinent to the plaintiff's request for an accounting. The Court finds it is appropriate to consider these items when deciding the present motion.

### A.   FDCPA Claim

Defendant Chase argues that the FDCPA does not apply to it because it is not a "debt collector," as that term is defined in the Act. Instead, Chase insists that it is a creditor itself and a mortgage servicer that has an interest in the note and mortgage, to which the Act is not applicable.

Congress enacted the FDCPA to prevent debt collectors from engaging in abusive and harmful debt collection practices by debt collectors. *See* 15 U.S.C. § 1692(e). A debt collector, as defined by the statute, is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." *Id.* § 1692a(6) (emphasis added). On the other hand, a creditor, according to the FDCPA "means any person who offers or extends credit creating a debt or to whom a debt is owed." *Id.* § 1692a(4). The FDCPA explicitly does *not* apply to "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor," *id.* § 1692a(6)(A), or "any person

-10-

collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii).

It is well-settled in the courts that "a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007) (quoting *Stafford v. Cross Cnty. Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003)). Furthermore, "the legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors . . . or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).

A mortgage servicing company may or may not be subject to the FDCPA, depending upon the status of the debt at the time the assignment is made. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (holding a mortgage servicing is not a debt collector as long as the debt was not in default at the time it was assigned); *Wadlington*, 76 F.3d at 106 (citing *Perry* approvingly). Creditors and mortgage servicing companies that fall within either definition noted above are not subject to the FDCPA. *MacDermid*, 488 F.3d at 735; *Wadlington*, 76 F.3d at 106.

In her complaint, the plaintiff does allege that the defendants are "debt collectors, as defined by the FDCPA." Compl. ¶ 13; *see also id.* ¶ 16. However, the plaintiff also acknowledges that mortgage was "sold to" Chase, "and then was assigned to" defendant LPBS. Compl. ¶ 18. There is no allegation by anyone that the loan was in default at the time of the assignment to Chase. Defendant Chase is a creditor for the purposes of the FDCPA because it is an entity "to whom a debt

-11-

is owed." 15 U.S.C. § 1692a(4). There are no allegations that defendant Chase ever sought to collect any debts other than its own. Moreover, the pleadings and documents establish that defendant Chase acquired its interest in the plaintiff's loan on September 7, 2006, and the default did not occur until 2009. Therefore, the debt was not in default when it was assigned to Chase. Consequently, the FDCPA does not apply to defendant Chase because "creditors are not subject to the FDCPA when collecting on their accounts." *MacDermid*, 488 F.3d at 735 (quoting *Stafford*, 262 F. Supp. 2d at 794).

The plaintiff's claim against Chase in count I of the complaint must be dismissed.

### B. Claim for Accounting

Chase argues that the complaint cannot support a claim for accounting because the plaintiff has a remedy at law and discovery is adequate to provide the information she seeks. That argument finds support in Michigan law, which governs this claim. Under Michigan law, "an action for an accounting is equitable in nature, but whether a plaintiff has stated a cause of action for an accounting must be determined from the facts pled in the plaintiff's complaint rather than from the prayer for relief." *Boyd v. Nelson Credit Ctr., Inc.*, 132 Mich. App. 774, 779, 348 N.W.2d 25, 27 (1984) (citing *Marshall v. Ullmann*, 335 Mich. 66, 70, 55 N.W.2d 731, 733 (1952)). If the pleaded allegations do not show the plaintiff lacks an adequate remedy at law, then the case may not proceed in equity. *Eyde v. Empire of Am. Fed. Sav. Bank*, 701 F. Supp. 126, 130 (E.D. Mich. 1988) (citing *Petrie v. Torrent*, 88 Mich. 43, 58, 49 N.W. 1076, 1081 (1891)). Furthermore, the burden is upon the plaintiff to allege facts demonstrating that she does not have an adequate remedy at law. *Ibid.* (citing *Nichols v. Martin*, 277 Mich. 305, 316, 269 N.W. 183, 187 (1936)).

"An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Boyd*, 132 Mich. App. at 779, 348 N.W.2d at 27 (citing *Cyril J. Burke, Inc. v. Eddy & Co., Inc.*, 332 Mich. 300, 303, 51 N.W.2d 238, 239 (1952)).  An accounting cannot be sustained where the action is for a specific sum under a contract. *Ibid.*; *Brown v. Brodsky*, 348 Mich. 16, 21, 81 N.W.2d 363, 366 (1957).  When a plaintiff's claims "are based entirely on the amount due under the mortgage note which, in essence, is a contract between the parties" the request for an accounting is also unsustainable. *Barkho v. Homecomings Fin., LLC.*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009).  If a plaintiff is unable to show "the necessity of invoking the equitable jurisdiction of the Court to order an accounting, [the] claim must be dismissed." *Ibid.* (citing *Wilson v. Cont'l Dev. Co.*, 112 F. Supp. 2d 648, 663 (W.D. Mich. 1999)).

In this case, the plaintiff cannot sustain her request for an accounting because she has an adequate remedy at law and the information she seeks can be acquired through discovery.  The plaintiff alleges she cannot resolve the "huge ambiguity as to the owner of Plaintiff's Mortgage and Promissory note" through normal discovery procedures and consequently must invoke the Court's equitable jurisdiction.  However, information pertaining to the owner of the note and mortgage is a matter of public record and is available at the Oakland County Register of Deeds.

The plaintiff also seeks an accounting of "all of the activities, assets, moneys collected, interest rates, effective interest rates, penalties, and other such actions" related to her Mortgage. Compl. at ¶ 10.  A request for an accounting that, like this one, is "based entirely on the amount due under the mortgage note which, in essence, is a contract between the parties" is unsustainable. *Barkho*, 657 F. Supp. 2d at 865; *see also Boyd*, 132 Mich. App. at 779, 348 N.W.2d at 27.

-13-

The information the plaintiff seeks is a matter of public record and based on a contract; therefore, she cannot establish that she lacks an adequate remedy at law or that the information is unavailable through discovery. Because of her failure to show "the necessity of invoking the equitable jurisdiction of the Court to order an accounting, [the] claim must be dismissed." *Barkho*, 657 F. Supp. 2d at 865.

## C. Fraud Claim

Defendant Chase argues that the plaintiff failed to meet the pleading requirements for fraud as required by both Federal Rule of Civil Procedure Rule 9(b) and Michigan law because the fraud allegations lack the required specificity. As a preliminary point, Chase's reference to Michigan law is impertinent, inasmuch as federal rules govern the pleading requirements in federal court. 28 U.S.C. § 2702(b); *Ridgway v. Ford Dealer Computer Servs., Inc.*, 114 F.3d 94, 98 n.5 (6th Cir. 1997) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1204 (2d ed. 1990)); *Long v. Adams*, 411 F. Supp. 2d 701, 705-07 (E.D. Mich. 2006); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, --- U.S. ---, 130 S. Ct. 1431, 1448 (2010) (Stevens, J., concurring) (stating that "[i]t is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law'" (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965))).

In federal court, when alleging fraud, a party must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod*

-14-

*Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (internal quotations and citation omitted).  In addition, a party must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotations and citations omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Where there are multiple defendants, a claim must identify which of the defendants made the alleged misrepresentations.  *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992).

The plaintiff's allegations of fraud are not pleaded with the particularity required by Rule 9(b).  The plaintiff alleges only that the defendants "intentionally made false representations of material facts to Plaintiff regarding the amount of debt," the "representations were false when they were made," and the defendants  "knew that the representations were false when they were made or they made them recklessly, without knowing whether they were true."  Compl. ¶¶ 57-59.  The plaintiff does not plead any specific information about why the statements were false, the fraudulent scheme, the fraudulent intent of the defendant, the injury resulting from the fraud, or which defendant made the statements.  Consequently, the plaintiff has failed to satisfy the pleading requirements for fraud set forth by the Sixth Circuit.  *See Coffey*, 2 F.3d at 161-62 (requiring the plaintiff to at least "allege the time, place, and content of the alleged misrepresentation . . . ; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud"); *Hoover*, 958 F.2d at 745 (holding a plaintiff must identify which of the multiple defendants made the alleged misrepresentation).  The plaintiff cannot state a fraud claim upon which relief can be

-15-

granted without satisfying the pleading requirements for fraud.  The fraud count of the complaint must be dismissed.

### D.  Claim for Exemplary Damages

Defendant Chase argues that the plaintiff's request for exemplary damages is not a stand alone cause of action but merely a derivative claim for a remedy. Perhaps that is so, but the allegations in this complaint must be viewed in context.

In order to recover exemplary damages under Michigan law, there must be some evidence of tortious conduct on the defendant's part.  *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 419, 295 N.W.2d 50, 55 (1980).  An award of exemplary damages is appropriate if it compensates a plaintiff for the "'humiliation, sense of outrage, and indignity'" resulting from injuries the defendant "'maliciously, wilfully and wantonly'" inflicted.  *Ibid.* (quoting *McFadden v. Tate*, 350 Mich. 84, 89, 295 N.W.2d 181, 184 (1957)); *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 385 (6th Cir. 1997).  It is true that a request for exemplary damages is not a stand alone cause of action.  Therefore without a substantive underlying cause of action for a willful or malicious tort, a plaintiff is not entitled to exemplary damages.  *Monoham v. Smith & Loveless Div., Union Tank Car Co.*, 343 F. Supp. 810, 813 (E.D. Mich. 1972).

However, in her complaint, the plaintiff alleges that "Defendants Chase . . . and [LBPS] misrepresentations were made intentionally and maliciously and have caused Plaintff to suffer humiliation, outrage, indignation and have had a negative impact on her health."  Compl. ¶ 62. Although she never labeled the count as such, the allegations do state a claim for intentional infliction of emotional distress.  Defendant Chase anticipated that argument and attempted to

-16-

preempt it.  But viewed most favorably to the plaintiff, the cause of action can be supported by the pleadings.

To the extent the tort is recognized in Michigan, *see Smith v. Calvary Christian Church*, 462 Mich. 679, 686 n.7, 614 N.W.2d 590, 593 n.7 (2000) (noting that the court "ha[s] not been asked to, and do[es] not, consider whether the tort of intentional infliction of emotional distress exists in Michigan"), "a plaintiff must prove the following elements: '(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress.'"  *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577, 686 N.W.2d 273, 276 (2004) (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999)).  "Liability for [the intentional infliction of emotional distress] has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Haverbush v. Powelson*, 217 Mich. App. 228, 234, 551 N.W.2d 206, 209 (1996).

Michigan courts have awarded damages for the intentional infliction of emotional distress in debt collection cases when collectors made repeated abusive and threatening phone calls to parties who did not owe a debt, *Margita v. Diamond Mortg. Corp.*, 159 Mich. App. 181, 190, 406 N.W.2d 268, 272 (1987); *Hett v. Bryant Lafayette and Assocs., LLC*, No. 10-12479, 2011 WL 740460, at *3 (E.D. Mich. Feb. 24, 2011), but not when the plaintiff alleged generally that he was traumatized by the prospective foreclosure of his property, *Mabry v. Ameriquest Mortg. Co.*, No. 09-12154, 2010 WL 1052355, at *1 (E.D. Mich. Mar. 19, 2010) (adopting Report and Recommendation, 2010 WL 1052352, at *4).

-17-

The plaintiff here not only challenges the debt, she also alleges that both defendants intentionally continued to send letters in her deceased husband's name and called her home asking for her deceased husband even after she provided them with four copies of his death certificate. Compl. ¶¶ 19, 23. In addition, the defendants allegedly used obscene, profane, or abusive language, attempted to coerce payment of the debt, repeatedly called the plaintiff's home with the intent to abuse and harass her, and made false representations about the amount of debt and legal actions that could possibly result from the plaintiff's non-payment. *Id.* ¶ 19. The plaintiff contends that the defendants' conduct resulted in severe physical effects as well as continuing emotional distress. *Id.* ¶¶ 20, 24. Viewed in the light most favorable to the plaintiff, her complaint states a claim upon which relief can be granted. She may pursue that claim in this case.

### E.  Injunctive Relief

As with the claim for exemplary damages, under Michigan law, the plaintiff's request for a temporary restraining order, preliminary injunction, and permanent injunction to stay foreclosure by advertisement must be denied because a plaintiff cannot seek an injunction as a stand-alone cause of action; it is only available as an equitably remedy. *Terlecki v. Steward*, 278 Mich. App. 664, 663, 754 N.W.2d 899, 912 (2008). Although the plaintiff alleges there is "a strong likelihood [she] will prevail on the issue as to whether she is behind on her mortgage payments" and defendant Chase's failure to make or follow through with a mortgage modification agreement, she has not pleaded a substantive cause of action for which the injunction is an appropriate remedy.

### F.  RESPA Claim

Defendant Chase argues that the amended complaint fails to state a claim under RESPA because the allegations are conclusory and factually bereft.

-18-

RESPA was passed to alter the settlement process for residential real estate purchases and substantively improve disclosure to consumers of the costs of real estate settlement.  12 U.S.C. § 2601.  The statute governs federally related mortgage loans, which include any loan

> secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government.

*Id.* § 2602(1)(A)-(1)(B)(i).

RESPA authorizes a borrower of a federally related mortgage loan to submit a qualified written request (QWR) to a lender seeking correction of an account believed to be in error or requesting specific information pertaining to the servicing of a loan.  *Id.* § 2605(e)(1).  Upon receipt of the QWR, the lender must acknowledge the borrower's request within twenty days and substantively respond to the inquiry within sixty days by providing the information requested or an explanation why the information is unavailable.  *Id.* § 2605(e)(1)(A), (e)(2).  Alternatively, the lender may "make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction."  *Id.* § 2605(e)(2)(A).

Damages flowing from a RESPA violation are limited to a borrower's "actual damages," plus additional damages up to $1000 if the borrower shows the lender engaged in a pattern and practice of committing violations.  *Id.* § 2605(f)(1).  To successfully plead a RESPA claim, the plaintiff must allege actual damages resulting from the lender's failure to comply with RESPA's requirements.  *Battah v. ResMAE Mortg. Corp.*, 746 F. Supp. 2d 869, 876 (E.D. Mich. 2010) (citing *Mekani v.*

2:10-cv-14696-DML-MAR   Doc # 62   Filed 08/26/11   Pg 20 of 22   Pg ID 942

*Homecomings Fin. L.L.C.*, 752 F. Supp. 2d 785, 796–97 (E.D. Mich. 2010)). Even if a RESPA

violation is established by the pleadings, if the plaintiff fails to allege actual damages, her complaint

must be dismissed. *Mekani*, 752 F. Supp. 2d at 796-97.

The plaintiff's allegations in her RESPA count are insufficient to state a cause of action upon

which relief can be granted because she alleges only that she sent defendant Chase a QWR, that her

representative called defendant Chase multiple times, and that defendant Chase violated RESPA.

*See* Compl. ¶¶ 77-79. These statements do not measure up to the fortified pleading requirements

of post-*Iqbal* Rule 12(b)(6), which require more than "bare assertions" that "amount to nothing more

than a 'formulaic recitation of the elements'" of a claim. *Iqbal*, 129 S. Ct. at 1951(quoting *Twombly*,

550 U.S. at 555). In addition, the plaintiff has not alleged actual damages resulting from the RESPA

violation.

Even if the plaintiff's allegations did satisfy the pleading requirements, she still would not

be able to establish that defendant Chase violated RESPA. There are several documents integral to

the plaintiff's RESPA claim that, although not attached to the pleadings, are considered because they

are "referred to in the pleadings and [are] integral to the claims." *Commerical Money Ctr.*, 508 F.3d

at 335-36. Those documents show that the plaintiff sent her QWR to defendant Chase on April 16,

2010. Def.'s Mot. for J. on the Pleadings, Ex. M, April 16, 2010 letter. RESPA requires the

defendant to acknowledge receipt of that letter within 20 days, 12 U.S.C. § 2605(e)(1)(A), which

defendant Chase did with its letter to the plaintiff on April 20, 2010, Def.'s Mot. for J. on the

Pleadings, Ex. N, April 20, 2010 letter. Defendant Chase sent the plaintiff a substantive response

letter on June 16, 2010, which was within the 60-day response time allowed by the statute. *Ibid.*,

Ex. H, June 16, 2010 letter. In compliance with RESPA, defendant Chase's response letter included

-20-

most of the information requested, as well as an explanation regarding why some information was not included and contact information if the plaintiff had any further concerns. *See* Def.'s Mot. for J. on the Pleadings, Ex. H, June 16, 2010 letter. Based on this information, defendant Chase complied with RESPA, and the plaintiff has not alleged facts establishing otherwise.

III.

The pleadings certainly establish a fact dispute over the balance owed on the plaintiff's mortgage loan, and it is clear that the plaintiff insists she had never fallen behind on payments. The complaint also alleges that the defendants engaged in conduct to collect their debt that was outrageous and ought not to be condoned. However, the pleadings do not set forth the elements of the claims the plaintiff seeks to advance against defendant Chase, except for a claim of intentional infliction of emotional distress.

Accordingly, it is **ORDERED** that defendant Chase Home Finance's motion for judgment on the pleadings [dkt. #25] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the complaint and amended complaint are **DISMISSED** against defendant Chase Home Finance, ONLY, except insofar as those pleadings are construed as stating a claim for intentional infliction of emotional distress.

It is further **ORDERED** that the hearing presently schedule on this motion for August 29, 2011 is **CANCELLED**.

s/David M. Lawson_____<br>DAVID M. LAWSON<br>United States District Judge

Dated:  August 26, 2011

-21-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 26, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL