UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNE E. TANN,

        Plaintiff,                        Case Number 10-14696
                                                   Honorable David M. Lawson

v.

CHASE HOME FINANCE, L.L.C. and
IBM LENDER BUSINESS PROCESS
SERVICES, INC.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT

On December 6, 2011, the Court entered an order granting in part defendants' motions for summary judgment and denying plaintiff's motion to amend, in which it dismissed with prejudice all of the plaintiff's claims except her claim for intentional infliction of emotional distress (IIED). The Court has reviewed the record further in light of the plaintiff's description of the evidence she intends to offer at trial, and now believes that it erred in not dismissing the plaintiff's IIED claim in its December 6, 2011 order. The evidence, even when viewed in the light most favorable to the plaintiff, does not support an IIED claim. Therefore, the Court will modify its earlier order and grant the defendants' motions for summary judgment in their entirety.

I.

The facts of this case were discussed at length in the Court's August 26, 2011 opinion and order granting in part and denying in part motion for judgment on the pleadings and during oral argument on the defendants' motions for summary judgment held on December 5, 2011. Therefore, a short summary of the facts in the light most favorable to the plaintiff will suffice here.

In 2001, the plaintiff and her husband, Jack Tann, financed the purchase of their house through Charter One Bank by signing a note for $194,000 and a mortgage that granted the lender and its successors and assigns a power of sale. Charter One assigned the mortgage to JPMorgan Chase Bank, who then transferred the mortgage to defendant Chase Home Finance LLC (Chase), who serviced the mortgage until August 1, 2010, when defendant IBM Lender Business Process Services, Inc. (IBM) began servicing the mortgage on behalf of Fannie Mae.

Jack Tann, who handled the mortgage payments until he was hospitalized in November 2009, consistently made late and sometimes partial payments. After Jack Tann passed away, the plaintiff assumed responsibility for the mortgage payments, but she occasionally made late payments. On May 5, 2010, Chase initiated foreclosure proceedings because the mortgage was in default. On May 15, 2010, the plaintiff requested a loan modification, and defendant Chase approved a trial period loan modification and agreed to stay foreclosure proceedings pending successful completion of the trial modification. On August 1, 2010, IBM took over as the plaintiff's mortgage servicer.

The trial plan required the plaintiff to make payments of $1,164.16 on August 1, September 1, and October 1, 2010. The plaintiff made the first trial plan payment, but her second trial plan payment was rejected. Both defendants occasionally made phone calls and sent letters to the plaintiff in an attempt to collect the past-due mortgage payments.

On October 25, 2010, the plaintiff filed her complaint in the Oakland County, Michigan circuit court. The complaint listed several "counts," although not all the counts consisted of distinct causes of action. The counts alleged: (1) violations of the FDCPA, (2) fraud in debt calculation, (3) violation of RESPA, (4) entitlement to an accounting to determine who owns the mortgage and note, the identity of the mortgage servicer, and who has legal authority to foreclose the mortgage, (5)

entitlement to exemplary damages for her humiliation, outrage, indignation, and negative health impacts, and (6) entitlement to a temporary restraining order, show cause order, preliminary injunction, and permanent injunction enjoining foreclosure by advertisement. The defendants removed the case, and filed motions for summary judgment. All of the plaintiff's claims, except a claim that the Court treated as intentional infliction of emotional distress, were dismissed.

The plaintiff did not expressly assert a claim for IIED in her complaint. Rather, she brought a claim for exemplary damages, which the Court interpreted as a claim for IIED. The complaint alleged that both defendants intentionally continued to send letters in her deceased husband's name, called her home asking for her deceased husband after receiving four copies of his death certificate, used obscene and abusive language in their attempts to coerce payment of the debt, repeatedly called the house with the intent to abuse and harass her, and made false representations about the amount of the debt and legal actions that could result from her non-payment. Compl. ¶ 19,23. The Court denied defendant Chase's motion for judgment on the pleadings on the IIED claim because the complaint alleged sufficient facts to survive. Opinion and Order Granting in Part and Denying in Part Mot. for J. on the Pleadings by Def. Chase at 18. However, Tann later testified that the defendants did not use obscene or vulgar language in their phone calls, and she had no record of how many calls were made because she turned the answering machine off and refused to answer the phone.

On August 11, 2011, defendant IBM filed a motion for judgment on the pleadings, which the Court converted to a motion for summary judgment. IBM argued that the facts did not support an IIED claim because the plaintiff could not point to any breach of duty distinct from the parties' contract.

On September 2, 2011, defendant Chase filed a motion for summary judgment arguing that it was entitled to summary judgment on the IIED claim because the plaintiff had no evidence that she suffered severe emotional distress or that Chase engaged in extreme and outrageous conduct so as to go beyond all possible bounds of decency, acted intentionally or recklessly, or caused any purported damage. In support of its argument, Chase pointed out that the plaintiff testified that Chase never used obscene, profane, or abusive language. Chase also argued that its letters to the plaintiff, which occasionally were addressed to her deceased husband, did not constitute extreme and outrageous conduct because they merely advised her that she was in default; the plaintiff testified that she had no evidence with which to prove that Chase acted intentionally or recklessly because she had no record of who called her or how many calls she received because she turned off the answering machine, Chase Mot. for Summ. J., Ex. A, Tann dep. at 67-70; and the plaintiff had no evidence showing Chase's collection efforts caused severe emotional distress. In her response to Chase's motion, the plaintiff argued only that the evidence would demonstrate that she was not in default on her mortgage and that the stress of losing her home caused her mental anguish.

The Court heard oral argument on the defendants' motions on December 5, 2011, during which the Court explained that it was not ready to decide as a matter of law whether IBM's rejection of the second payment under the trial modification plan was extreme and outrageous, and that a question of fact existed as to whether Chase passed along to IBM the proper information regarding the loan modification when it transferred its servicer obligations. As a result, the Court granted in part and denied in part the defendants' motion for summary judgment. The defendants each filed motions for reconsideration, both of which were denied.

II.

The Court has "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991); *see also Franzen v. CSX Transp., Inc.*, 983 F.2d 1066, 1992 WL 377074, at *2 (6th Cir. 1992) (table) (noting that "grant of partial summary judgment was merely an interlocutory summary adjudication, and as such, was subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties" (footnote and internal quotations omitted)).

The standards for evaluating a motion for summary judgment under Federal Rule of Civil Procedure 56 are well known but bear repeating here. As the Sixth Circuit explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009). In addition, when "'reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. . . . Thus, the facts and any inferences that can be drawn from those facts[] must be viewed in the light

most favorable to the non-moving party.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)); *see also Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'") (quoting *PDV Midwest Ref., LLC v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

"[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Highland Capital*, 350 F.3d at 546 (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted).

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for

summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

As the Court discussed in its August 26, 2011 opinion, to make out a claim for IIED, "a plaintiff must prove the following elements: '(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress.'" *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577, 686 N.W.2d 273, 276 (2004) (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999)). "Liability for [the intentional infliction of emotional distress] has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Haverbush v. Powelson*, 217 Mich. App. 228, 234, 551 N.W.2d 206, 209 (1996). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Graham*, 237 Mich. App. at 674, 604 N.W.2d at 716. Even extreme conduct is protected under certain circumstances. As the Michigan Supreme Court explained: "The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905, 909 (1985) (quoting Restatement Torts, 2d, § 46, comment g, p. 76).

Michigan courts have awarded damages for the intentional infliction of emotional distress in debt collection cases when collectors made repeated abusive and threatening phone calls to parties who did not owe a debt, *Margita v. Diamond Mortg. Corp.*, 159 Mich. App. 181, 190, 406 N.W.2d 268, 272 (1987); *Hett v. Bryant Lafayette and Assocs., LLC*, No. 10-12479, 2011 WL 740460, at *3 (E.D. Mich. Feb. 24, 2011), but not when the plaintiff alleged generally that he was traumatized by

the prospective foreclosure of his property, *Mabry v. Ameriquest Mortg. Co.*, No. 09-12154, 2010 WL 1052355, at *1 (E.D. Mich. Mar. 19, 2010) (adopting Report and Recommendation, 2010 WL 1052352, at *4).

Upon consideration of the parties' pretrial submissions and further reflection, the Court now finds that the facts, even when viewed in a light most favorable to the plaintiff, do not support a claim for IIED against either defendant. The evidence offered by the parties establishes that the plaintiff's mortgage was in default and the defendants occasionally made phone calls and sent letters to the plaintiff, none of which were vulgar or obscene, in attempt to collect on the amount owed under the mortgage. The Court finds that the plaintiff has not presented any evidence that defendant Chase failed to provide IBM with the proper information regarding the trial loan modification and, even if she had, that conduct would not rise to the level of extremity required under Michigan law to support an IIED claim. The Court finds that IBM's rejection of the plaintiff's second payment under the trial loan modification, for whatever reason, is not so extreme as to support an IIED claim. The plaintiff has offered no other evidence of extreme or outrageous conduct, as the Michgian courts have defined that term. The plaintiff cannot make out an IIED claim as a matter of law.

III.

Upon further consideration of the record in this case in the light most favorable to the plaintiff, the Court finds that the plaintiff's IIED claim must be dismissed because the defendants' conduct is not so extreme and outrageous as to support such a claim. Therefore, the Court will grant the defendants' motions for summary judgment.

Accordingly, it is **ORDERED** that defendant IBM Lender Business Process Services, Inc.'s motion for summary judgment [dkt. #59] is **GRANTED**.

It is further **ORDERED** that defendant Chase Home Finance, LLC's motion for summary judgment [dkt. #65] is **GRANTED**.

It is further **ORDERED** that the parties' motions *in limine* [dkt. #102, 103, 104] are **DENIED as moot**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 17, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 17, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL